John WEYMOUTH, Appellant,

v.

The STATE of Texas, Appellee.

No. 35816.

Court of Criminal Appeals of Texas.

May 29, 1963.

Rehearing Denied June 29, 1963.

Kenyon Houchins, of Houchins & Tasker, Houston, for appellant.

Frank Briscoe, Dist. Atty., Daniel P. Ryan, Jr., and George Stack, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Presiding Judge.

The offense is disturbing the peace; the punishment, a fine of $200.

This prosecution arose in the corporation court, the complaint alleging that the appellant did unlawfully go into and near the private house occupied by the complaining witness and *his* family and did then and there expose his person to the complaining witness, who was over 16 years of age, " * * * in a manner calculated to disturb the persons present at such private house * * *"

In the trial de novo in County Court before a jury on a plea of not guilty only one witness, the 25 year old married woman who signed the complaint, testified and the facts are not in dispute.

According to the evidence the appellant was standing in the back doorway of his garage. The complaining witness, who lived nearby, was at the fence of her back yard some 50 or 60 feet from the appellant's garage. She was talking to two neighbor boys that the appellant had been talking with a short time before. She had an open view of the apppellant and testified: "He was standing facing me with his hands on his hips and he was fully dressed except he had his person exposed."

"The second time I saw him during this exposure he was still facing me and he was playing with himself with his hand * * * The first time he had his hands on his hips and the second time he had his privates out and playing with himself.

"Q. At the time you saw him with his privates out where were these two children—these neighbors' children?

"A. They were still right there digging in the ground.—

"Q. When you first saw him at the time he had his privates out, what reaction did you have; how did that effect you?

"A. I was somewhat shocked and amazed. I decided instantaneously not to become excited because I didn't want to upset these two boys and I also wanted to see what he had on his mind, so I just stayed there. I continued my conversation with the boys and upon occasions I would glance around to see what Mr. Weymouth was doing—

"Q. To your knowledge did you observe whether any of the neighbor's children were looking at him at the time?

"A. No, sir. As far as I could tell they didn't see anything."

She also testified that the appellant was looking in her direction and testified: "The last time I saw him that day he was standing sideways facing—I guess what would be his kitchen, and he was in the process of zipping his pants up.—

"Q. What did you do then?

"A. I quickly got out of my conversation and calmly strolled over to my husband and told him about it."

The testimony of the complaining witness was that her husband was raking leaves and her little girl was in her play pen in the yard, but that her husband couldn't see anything from the area where he was raking because of the oleander bushes or trees some 10 or 12 feet high along the fence dividing her yard from her next door neighbor's, there being about a 5 foot break through which she saw the appellant expose his private parts.

The complaining witness testified that she talked to the mother of the boys who were digging the next day and the following day reported the matter to the police.

On cross-examination she testified that one of the neighbor's boys was 9 and the other 13 years of age.

The appellant directs attention to her further cross-examination wherein she testified:

"Q. Did Mr. Weymouth go into your house and near your house that day? A. No, sir, not to my knowledge.—He got no closer to my house than the back fence that day.—

"Q. And after he left the back fence, this occurrence that you testified about occurred? A. Yes, sir.

"Q. And he was standing at the time within the door or was he out in the yard? A. No, sir, he wasn't within the door.

"Q. And you were peeping into his house at the time you saw these things, isn't that true?

"A. I guess you would say that.

"Q. Did you part the oleander bushes to get a good look?

"A. No, sir, they aren't over there.

"Q. There is a pear tree.

"A. Yes, sir, but it is to my left looking in Mr. Weymouth's direction."

Art. 474, Vernon's Ann.P.C., under which the appellant was prosecuted, provides:

"Whoever shall go into or near any public place, or into or near any private house, and shall use loud and vociferous, or obscene, vulgar or indecent language or swear or curse, or yell or shriek or expose his or her person to another person of the age of sixteen (16) years or over, or rudely display any pistol or deadly weapon, in a manner calculated to disturb the person or persons present at such place or house, shall be punished by a fine not exceeding Two Hundred Dollars ($200). * * "

The controlling question is whether the evidence is sufficient to sustain the jury's finding that the appellant went near the private house of the complaining witness and exposed his person. Did the appellant violate Art. 474 V.A.P.C. by exposing his private parts to the complaining witness while she was in her back yard some 60 feet away and in clear view?

It is interesting to note that had he been charged with exposing himself to the children with whom the lady was conversing, the offense would have been a felony under Art. 535c V.A.P.C.

The contention of the appellant is that "private house" as used in Art. 474 does not embrace the back yard or curtilage, but only the house itself.

As we understand the evidence, the house of the complaining witness was no more than 60 feet from the back fence where the complaining witness was standing, and the appellant was 50 or 60 feet in another direction when he exposed his person.

The evidence is deemed sufficient to sustain a finding that the appellant exposed himself so near the private residence as to be calculated to disturb "persons present at such house", and in doing so violated Art. 474 V.A.P.C.

The judgment is affirmed.